v. United States Environmental Protection Agency 20-422, Ms. Onozawa. Good morning, Your Honors. May it please the Court. My name is Tomoko Onozawa from the U.S. Attorney's Office for the Southern District, and I represent defendant-appellant U.S. Environmental Protection Agency in this appeal. Your Honors, the District Court's August 2019 order should be reversed in part for two reasons. First, the 18 messaging records at issue in this case fall within the precedent of this Court, the First Circuit, and the D.C. Circuit, which have exempted from disclosure documents reflecting internal agency deliberations about how and what to communicate to the public about an already decided agency policy. Second, the District Court overlooked facts in the records showing that six of these 18 messaging records, and separately four internal briefing records, were properly withheld because they reflected deliberations about ongoing rulemaking. First, Your Honors, the issue is whether the District Court was correct in holding that decisions about how to publicly convey information about an already decided agency action or policy are qualitatively the types of agency decisions whose underlying deliberations don't merit protection. And the District Court was incorrect on the law, disregarded the context in which these decisions or deliberations occur, and disregarded the impact that a categorical exclusion of agency deliberations about how to convey an already decided policy would have on the quality of government decision-making. This Court and two Circuit Courts recognize that records reflecting deliberations about how to  communicate already decided policies are subject to the deliberative process privilege. In ACLU v. DOJ, this Court held that a draft proposed op-ed article that suggested ways to publicly explain the government's legal reasoning in support of drone strikes, which had already occurred, and suggested talking points concerning the legal basis for using legal force against Al-Qaeda are protected by Exemption 5 and the deliberative process privilege. Again, the drone strikes had already occurred at the time the draft op-ed and the talking points were prepared. This Court had before it the same arguments regarding messaging records that the parties in this appeal had presented. And if it were correct as a matter of law that Exemption 5 categorically excludes decisions about a message or convey to the public already decided policies, there would have been no basis to this Court's conclusion that these documents were subject to withholding. Similarly, in New Hampshire v. Right to Life, the First Circuit held that the deliberative process privilege protects draft documents reflecting deliberations about how and when or whether to publicly communicate an already made agency decision to provide a grant to Planned Parenthood. The First Circuit held that these records were protected by Exemption 5 because an agency's decision about how and what to communicate to the public is a decision in and of itself. And in Cricordian v. State, the D.C. Circuit held that a draft letter proposing options for reply to public reactions to a published agency policy reflected advisory opinions that are important to the deliberative process. So, the common denominator underlying all of these decisions is the recognition that agency deliberations about how to explain an agency decision to the public involve sensitive deliberations that implicate the interests that the deliberative process privilege is intended to protect against. And the District Court… So, you said a moment ago that there shouldn't be a categorical exclusion. I mean, I think I know your answer to this, but the District Court and I think the NRDC don't really propose a categorical exclusion. It seemed to me that they acknowledged that messaging documents might be deliberative if it's sufficiently related to the essential policymaking role of the agency. There's a decision of the District Court that suggests that when the Federal Reserve announces its policies, even though the decision has already been made, that that might be deliberative. And I guess they respond to that First Circuit case by saying that there's incendiary politics around abortion funding. And so, there, that might count as deliberative. Why are these exceptions sufficient? So, the District Court did impose a per se rule that deliberations about how to publicly communicate already decided policies are categorically not subject to the deliberative process privilege. And I point to page 290 of the Joint Appendix, where the District Court noted that EPA's concession that certain messaging records concerned whether and how the agency should publicly present previously decided policies, quote, is fatal to the EPA's position that these records were subject to the deliberative process privilege. Moreover, with respect to the First Circuit's decision in New Hampshire versus Right to Life, as we pointed out in our reply brief, the government squarely presented those draft records as messaging records because the underlying policy, again, the decision to grant funding to Planned Parenthood had already been made. And the decision then facing the agency at the time those records were created was in determining how to present or announce that policy to the public. So, look, whether a messaging record qualifies for the privilege needs to be approached like any other record that an agency asserts is privileged. And the District Court's categorical rule, when applied broadly to compel the disclosure of all deliberative records relating to messaging already decided policies, certainly has the potential to create public confusion and misunderstanding when an agency is in the process of responding to questions from the public, press, or Congress about its actions. And messaging records can't- I mean, I take it you'd say that these kinds of messaging decisions do implicate policy-oriented judgment, but why don't you explain why that would be? Sure. Messaging records can be related to the process by which policies are formulated. So, for example, an agency's message can seek to improve or clarify the interpretation and understanding of agency policies. And the process of creating a message can entail decisions about how agency policies will be implemented in a particular circumstance, how they'll be affecting specific stakeholders, and questions that may not be apparent from the face of the policy, questions that may not have been considered by the agency when the policy was decided. And in determining how and whether to respond to these questions, they do require careful, thoughtful, candid deliberations about the meaning and implications of those policies. And again, it's those deliberations that ought to be shielded, both to avoid public confusion about what the agency's understanding of its own policy is, and second, to allow agency subject matter experts considering these questions to discuss their thoughts and opinions in a candid way. Can I ask you about the briefing records? So, you didn't bring that up, but with respect to the briefing records, we've said in prior cases that an agency might need its burden of proof to show something was pre-decisional if you could show that the document was written to facilitate an identifiable final agency decision. But in the Supreme Court, in Sears Roebuck, told us agencies are and properly should be engaged in a continuing process of examining their policies. The process will generate memoranda containing recommendations which do not ripen into agency decisions, and the lower courts should be wary of interfering with this process. So, how do we reconcile those? If there's a document that's about agency decision-making processes in general or their deliberative processes in general, but maybe there isn't a tie to a very specific decision or maybe a decision never materialized, can that still be deliberative? So, in general, I believe it can be to the extent the agency's bond submissions can sufficiently identify the consultative and deliberative process to which the particular deliberations occurred. Indeed, not all agency deliberations ripen into a final agency decision or action. It may well be that as a result of the deliberations, the agency decides not to take action or decides not to issue a public message. Right. So, I understand that in this case, you're saying that the briefing documents are connected to a specific decision. But I guess my question is, even if they weren't, if it was, well, the agency was considering how to take into account epidemiology evidence in its decision-making processes, and it was going this way or that, or maybe reviewing existing policies without a specific decision on the table, it seems to me that under the Sears Roebuck language, maybe that would be deliberative. But under some other language in our cases, maybe it wouldn't. And I'm sort of wondering, would you consider putting aside the connection to a specific identifiable policy? Would it still be deliberative if it was part of the agency's general review of policies or part of considering the decision-making processes? So, with respect to the four briefing records, Your Honor, the agency's Vaughan Affidavits and Index, I think, tied the deliberations underlying the four briefing documents to two ongoing rulemakings under the Toxic Substances Control Act that were ongoing at the time. And both of assessments and procedures for chemical risk evaluations. And the Vaughan submissions also explained how the four briefing records contained pre-decisional deliberations. I get that argument. I was wondering if that tie to a specific rulemaking is necessary, because I think the language in different cases seems to point in different directions, and I'm wondering if you have a position on that. I don't think it necessarily needs to tie to a specific decision. It could be either a specific decision facing the agency at the time, or it could relate to a specific consultative process that the agency was undergoing deliberations about at the time. I don't know if that answers Your Honor's question. But with respect to the briefing records... Fair enough. Okay. I have a question. With respect to specific documents that are the subject of appeal, it's the government's position that the review in this court of the application of exemptions to those specific documents is de novo? That is correct. So, it's incumbent on us then to look at each of the documents and determine whether or not they're covered by the exemption. Based on the factual records before the court, which is essentially two Vaughan affidavits that were submitted by an authorized representative of the agency and an extensive Vaughan index articulating the justifications for withholding. Okay. And so, that would be the same exercise if instead of the 20 documents we're looking at in this case, we're looking at the thousand documents that were initially identified and might theoretically be subject to dispute as to FOIA coverage. So, the district court's August 2019 order related to 116 records that had been selected by NRDC and Vaughan by EPA. Since, as a result of the district court's order and certain disclosures that EPA has made, the universe of records on appeal has been narrowed to 22. I understand that. But just assume hypothetically that that's true. If that hadn't happened and the universe was a thousand documents, we'd have to make a document by document determination. We couldn't defer to the district court. To the extent those thousand documents were hypothetically the subject of appeal, then yes, I believe this court could conduct a de novo review of the sufficiency of the agency's withholding them. I mean, we could, but in this case, is it not the case that the… It would be obligated. Parker, finish your question and then I'm going to ask you. No, I'm just saying that if hypothetically speaking this case involved a thousand documents, we would be obligated to look at each one and make a determination. So, your honor, I just wanted to clarify when you're referring to looking at each one, is it specifically in camera review or something else? No, there are a thousand documents that the government says are protected by the FOIA exemption or your adversary says they're not. When they get to us, let's say this has not been resolved. The district court made a decision that none of them were subject and government took an appeal. We would then be obligated to look and make an individualized determination with respect to each one. So, I think the response to that is, your honor, the district court… So, there are elements of what the government's burden is in determining and in justifying a withholding. And the district court already made, and as we pointed out in our briefs, a finding that there would be reasonably foreseeable harm flowing from the disclosure of all 116 records that were the subject of the party's cross motions for summary judgment. That issue was conclusively decided. Plaintiffs haven't appealed that determination. And so, I think for purposes, and really, the question here is whether the district court was… I'm familiar with what happened here. My question was just entirely hypothetical. I just want to be sure that we are not exposing ourselves to a road that we might regret. There may be no alternative, but I just want to be sure I understand the government's position on that hypothetical. On the hypothetical… But again, it would relate… The hypothetical would relate to the contested parts of the district court's ruling with respect to those 1,000 records. There may be aspects of the district court's decision about the sufficiency of the government's justifications that neither party has contested and may not be before this court. I'm not sure if I'm answering your honor's question, but again, I think it would depend on… Can I just ask this question? So, it's just my understanding of this case that's before us is there are two buckets of records. There are the messaging records, and the question with respect to those is whether a messaging or communications decision by the agency and deliberations leading up to such a decision are protected by the deliberative process privilege. And that whole bucket just depends on the answer to that question. And then there are the briefing records, and the answer to whether that is protected is whether the agency has shown a sufficient tie of those records to those pending rulemakings, or perhaps maybe… Or something else. Not necessary. Right. So, that's just two legal questions for us to determine on appeal. And I suppose if the district court had several different legal decisions why different buckets were not protectable, then we'd have a lot of different questions in a future case. But here, we just have those two buckets, which ends on those two legal questions, right? That's correct, your honor. So, Ms. Auer, I've got a few questions. I'm a little surprised that you are describing the district court's rule as more or less categorical. But I want to focus on your proposed, or the government's proposed, rule or approach. Can you… Is there a messaging record, as the government describes messaging records, that would be… that would not be protected? In other words, that might be subject to disclosure under FOIA, under your proposed approach. So, to be clear, your honor, our proposed approach is that this circuit aligns itself sort of with its holding in ACLU and the First Circuit and the D.C. Circuit. Well, let me just… We'll get to the D.C. Circuit and whether it's actually definitively, as a circuit, resolved this issue. But I'm… And I understand that you are embracing the New Hampshire case in the First Circuit, but would you just… Is there a messaging record that would not be protected and that would be subject to disclosure under FOIA, under your approach? So, a messaging record, like any other deliberate record that's being withheld on the basis of deliberative process privilege, could be disclosed to the extent, for example, and again, and I'm referring generally to all records being withheld as deliberative, could be subject to disclosure if there are, let's say, factually segregable material in that record that isn't inextricably intertwined with the deliberative aspects of the message. It could, as… I can't imagine how it would, but hypothetically speaking, as the Supreme Court in NLRB v. Sears acknowledged, somehow embodies the working law of the agency. It could be… It's the… I can't imagine how it would be… So, you've not really answered… Maybe you just did answer my question. You actually don't believe that there are messaging records, maybe subject to this codicil about facts that are spinning and that are not in any way, shape, or form connected to the message, frankly. But you can't see or think of a record, a messaging record, that would be subject to disclosure under Exemption 5. It's difficult to answer that question in the abstract, Your Honor. I think, again, the exceptions to withholding that would apply to any deliberative record, including messaging records, would certainly apply. And, again, that would go to questions of… I'm sure. I'm a little… I'm a little confused. Maybe just to help me clarify, I think… I thought the government's position was that an agency's decision about how to communicate its policies or issue statements to the public is like the agency's decision about how to arrive at a particular policy. And so, documents in which the agency is deliberating over how to communicate a message should be treated the same as documents in which the agency is deliberating over how to arrive at a policy. And so, there just shouldn't be special rules for messaging documents versus other kinds of documents. They're just all deliberative because they're all pre-decisional. I assume you'd say messaging documents should be disclosed when the agency has made the communications decision. And so, it's no longer pre-decisional, just the way you would do policy deliberation, right? I mean, that doesn't seem like it's an odd result. That's correct, Your Honor. I think… And I think, Your Honor, I can summarize the government's position accurately. We're just saying that deliberations about how to present an already decided policy or decision to the public are no less worthy of the deliberative process privilege protections than deliberations about how to present an agency decision or action that's still being developed. But wouldn't that depend on what the document actually said rather than the characterization of the document? I think, Your Honor, it's on the basis of the agency's bond submissions explaining what the decision was or what the decision-making or consultative process was, how that record fell into that process, whether it preceded any decision or conclusion of process that was already made, whether that record contained the advice, analysis, and opinions of people who were not authorized to make decisions on behalf of the agency, and whether there could be reasonably foreseeable harms that could result from disclosure under Exemption 5. And messaging records would be subject to that. It would still be the agency's burden to show that with respect to a messaging record as it would for any other type of non-messaging record that the agency would contend is deliberative. And so this, and maybe this is, you're fully embracing this First Circuit decision, or what appears to be the decision, it's not completely clear to me, that if, even if a document reflects a communication about existing policies, to the public, right, that is deliberative as to the final message. And so that is correct. Okay. All right. And there really is no exception, but let me ask you, if, and maybe this is what you were saying about the facts, the facts that are not intertwined, I'm trying to figure out how far this goes, and maybe this has something to do with what might be called the deliberative process. I'm a little familiar with this, but, so if someone, if an individual department head asks for suggestions from a subordinate in connection with describing or preparing a description of existing agency or department policies, and what the subordinate says in response is, you know what, in this, in this PowerPoint, you might want to reorder the slides, or in this speech, you might want to just, you know, in a way that makes sense. It would, because, okay. I'm sorry, I didn't mean to cut you off. Go ahead, go ahead. Okay. So certainly, deliberations about what to put in this PowerPoint, and let's presume that the agency head was looking for, you know, some set of demonstratives or talking points, right, to describe this already decided decision or policy, and there were deliberations about reordering, or what to emphasize, or what to de-emphasize, or what to exclude, or what to include. Those deliberations, those opinions are sort of part of the deliberative process, in turn, but leading up to the final decision about how to present this decision or policy action to the public, and, you know, the extent, you know, Your Honor's hypothetical takes into account discussions about reordering things or prioritizing things, you know, those reflect subjective opinions and recommendations about how best to present the policy to the public, and we submit that these are merit protection under the deliberative process privilege. Sure, well, I suppose, like, in that kind of example, the agency head could be, you know, being testifying before Congress to explain how the agency is operating, and how its policies are being implemented, and whether it's consistent with their authorities, and so on. I can imagine really policy-heavy judgments being made about how to explain why the agency's policies are consistent with its authorities, and you could explain it broadly or narrowly. You could explain it in the context of the agency's overall agenda, and so on. So maybe if you just tell me, so am I right in thinking that these are not just aesthetic judgments about, you know, where different slides should appear in the PowerPoint, but also how the agency should answer to Congress about questions about where its policies fit in the agency's authorities, and its scheme of administration, and how it's going to explain itself to stakeholders, and so on. I mean, those seem like policy-laden judgments, is it different when the policy has already been decided or not been decided? No, I don't think those considerations change with respect to deliberations about already how to present, or describe, or explain, or answer questions about already decided policies. I mean, for example, preparing a response to congressional questions for the record, or testimony before Congress, you know, is an exercise of anticipating what the public's questions might be, or what concerns people might have, or clearing up confusion about, based on public reports. I mean, early drafts, I mean, I've seen early drafts of questions for the record. I mean, they might totally misdescribe the way some agency policy fits within its authorities, or the agency's overall agenda, and so on. I mean, is there any, is there a reason to the interest we talk about in terms of deliberative process for correcting those kinds of misunderstandings in early agency drafts that are leading toward the adoption of a policy would be different when it's leading toward, you know, the agency head explaining to the public, or to the Congress, why its policies fit within its authorities, or are appropriate to the agency mission? Well, your honor's question sort of pointed out sort of one key consideration underlying why these deliberations need to be privileged. There could be wrong information in drafts. Their drafts can have competing views. You know, and again, it's, I think these deliberations, or these drafts need to be protected in order to ensure that, you know, subject matter experts looking at these sort of competing texts and changes are convinced that whatever the final message to Congress is, is the correct one, and contains information accurately. Parker, you had a question? Oh, no, I'm, it's been covered. Thank you. Okay. We will hear, I think, the government, you've reserved three minutes for rebuttal, so we'll hear from Ms. Freed, and then we'll return to you. Thank you. Thank you, your honors, and may it please the court. My name is Rachel Freed on behalf of the Natural Resources Defense Council. There is no messaging records privilege in FOIA. The government asserted the deliberative process privilege, which requires it to show that the records at issue are both deliberative and pre-decisional to a policy-oriented decision. The government argues, in its briefs and before the court today, that every messaging decision is a decision in itself that should be protected, and it asks this court to exempt every messaging record in this case, even the ones that post-date the relevant policy decisions and that discuss issues unrelated to policy formation. Make no mistake, the government asks this court for a categorical rule that does away with the privilege's core requirements, and a categorical rule exempting messaging records is unsupportable because messaging records are not inherently policy-oriented. The government acknowledges this. Earlier today, Ms. Onizawa stated that messaging records, quote, can be related to the process by which policies are formulated, not always are related, and the government stated the same thing in its brief, not always. The district court, we, and the government all agree on that point. Like any other record, it attempts to withhold under the privilege, the government must show that a messaging record contains policy deliberations about a policy-oriented decision. This court so held in Grand Central, Antigua, La Raza, as has the D.C. Circuit in Petroleum Information Corp. and the recent Holland Associates case. The district court cored over the government's own submissions and asked of each record, including messaging records, has the agency... Is it, is it, I'm sorry Ms. Reid, is it your view that the D.C. Circuit, separate and apart from D.C. district courts, has, has a holding on this issue? Well, so in Holland Associates, the D.C. Circuit held that the timing of the substantive policy decision is everything. So the records at issue there related to EPA's decision not to apply an aid circuit decision outside of that circuit. The district court had permitted EPA to withhold all vacated the district court's decision and held that only records that predated the agency's non-acquiescence decision, not the announcement, could be privileged. And the court held that the timing of the relevant policy decision was dispositive, notwithstanding that the agency had claimed that those were messaging records in that case. I do, I want to be clear about what the district court held. The district court did not impose a categorical rule on messaging records. The district court permitted EPA to withhold any messaging records that revealed the underlying substantive policymaking decisions, that revealed the status of internal deliberations about other substantive decisions falling within the agency's statutory ambit, or where the messaging decision... Can I ask about, can I ask about the premise about everything needs to be policy oriented? I mean, in the, when the Supreme Court describes the delivery of process privilege, the canonical description is that it covers documents reflecting advisory opinions, oh wait, sorry, advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated. So doesn't it, doesn't the way the Supreme Court talks about the privilege suggest that there are some agency decisions that are different than policies? Why is the assumption that everything an agency deliberates over is a other decisions it makes about administration or communications? The privilege protects agency deliberations about policy-oriented decisions, and we know that from Sears and because of this, from this circuit's precedent. Now the Supreme Court in Mankin and Sears held that the privilege was incorporated into Exemption 5 to protect records dealing with agency law or policy. And in this circuit, in the D.C. circuit, have held multiple times that records must be both pre-decisional to a policy-oriented decision and actually related to the process by which policies are formulated. We say it involves, we say it involves policy oriented judgment, right? Exactly, Your Honor. Right, so, but I guess, I guess I have this question. So you don't deny that the communications, like how to, how an agency head is going to describe a policy to members of Congress and so on is a decision. You're just saying it's not a decision. But I guess my question is this, you know, when the agency deliberates over how to explain its policies to members of Congress or to other stakeholders, isn't it exercising policy-oriented judgments? Don't you need to know how the policy fits into the agency's authorities and mission and other policies and so on? Isn't there a lot of expertise that's being brought to bear when an agency explains or justifies its policies, you know, with respect to congressional oversight or the public or other kinds of fora? So, to answer Your Honor's question whether such a record is policy-oriented, not necessarily. And from the facts that Your Honor stated, I would say no. And we know that because decisions about how to explain an already made policy are not privileged. We know that from Sears. We know that decisions or messaging that is just to support a decision already made are not policy-oriented. We know that from Petroleum Information Corps. We know from the Coastal States. I guess I understand, you know, we can debate the language of those decisions. But I guess I'm just asking you to explain to me why that's not a policy-oriented decision. It seems to me, you know, when an agency head goes before Congress to explain its policies, there is in fact a lot of deliberation that goes on within the agency about how to explain its policies and how to answer inquiries from members of Congress. And that involves a lot of policy-oriented judgment. So, why isn't that the sort of policy-oriented judgment that our cases talk about? Why isn't that the same kind of expertise that goes into formatting the policy in the first place? Because there is no policy decision being contemplated when an agency is just determining how to message a policy that's already decided. They're different. And I think the case law says that those types of things are different. I mean, if you have an earlier draft of, you know, the agency head's testimony before a member of Congress that says, well, we adopted this policy because this or that reason. And somebody within the agency decides, well, that is totally wrong and misunderstands the governing law or it misunderstands the nature of the policy and so on. And then there's an internal debate over how it should be explained and justified. I mean, do you not think that there should be, that the agency needs to have protections that would allow it to have candid discussions about those kinds of deliberations? Why isn't that the same sort of deliberation that the deliberative process privilege protects? Well, to the extent in that example, there might be a draft of a messaging record that refers to or, you know, contains deliberations about the underlying policy. So, for instance, I'm just kind of going with the hypothetical. You know, if there's a draft email saying, you know, this reporter asks why we decided this policy, here's my draft response. We decided it for X and Y reasons. And then there's a, you know, somebody responds back in the agency saying, oh, no, we, why we considered, but we didn't actually, that, you know, that wasn't the reason. Oh, sorry, my bad. Well, why could be, that could be redacted because that actually reflects the deliberations of the underlying substantive policy. And the district court permitted any of that type of information. Right, okay, so that's helpful. So then if the record, in fact, didn't say that, and that's not why we adopted it, but in fact, you know, the question from Congress is, how do you justify this thing you adopted? And there's an initial draft that says we justified it for X reason. And then other people in the agency say, well, that's not a good reason. Like that's not consistent with our authorities and so on. And you shouldn't say that to Congress because it's going to trigger lots of oversight and it's going to be a big mistake. And so we should talk about our justification in terms of why. It seems to me that discussion is not about why it was adopted in the first place, but how to explain the policies to Congress. But it seems like there's a very fine line between that kind of discussion and what you've just described. Well, I agree with your honor that that discussion is different and I don't think that that discussion is privileged. So why is it so different? It seems to me it implicates the same kind of policy oriented judgment that you described in your hypothetical that necessarily would be privileged. I disagree, your honor. I mean, I think that, you know, to the extent that the discussion only goes to how to support a policy already decided, how to explain a policy already decided, how to apply a policy already decided in hypothetical situations, all of those, there is circuit court case law saying that those types of things. Right. Even how to apply a policy. So you're saying, telling me that if an agency is having deliberation, they've adopted some rule through a rulemaking and someone in the agency says, oh, we should take enforcement action over against this party because they're subject to this rule. And someone else in the agency responds by saying, no, that's not the scope of the rule. That's not a regulated party under the way we drafted the rule. And there's a debate over whether an enforcement action should be taken against a particular, a particular party. You're saying that because that's an application of a policy that wouldn't be protected either? No, your honor. So that sounds like it would be protected because the agency is contemplating a specific decision. So what the- Right. So when you said a moment ago, the application of policies already decided- In hypothetical scenarios. Right. So that actually comes from the Coastal Safe Gas Court case where the records at issue were DO, Department of Energy memos sent to field offices describing how an already decided policy would apply in hypothetical factual scenarios. And the DC circuit held that those records were not deliberative because there was no decision being made or policy being considered. Rather, the documents discussed established policies and regulations in light of- So you're saying that when an agency is deciding whether it should apply to a specific party that would be protected, but if they're trying to protect a specific group of parties, it wouldn't be? Or it's like a judgment about whether there's a sufficient tie to, like maybe it would be depending on the particular fact. Is that- Yes. It's a case by case analysis for each record. To the extent that the agency can pinpoint any actual decision it's contemplating, and it shows that a record was prepared to aid in its deliberation of reaching that decision, even if the decision is ultimately not made or rejected, of course that can be privileged. But to the extent that an agency is just discussing how do we message, how do we support, how do we talk about a policy- Well, can I ask you a question about the exceptions to the rule about messaging documents? So it seems like in your brief and the district court said that sometimes the messaging, deliberations over messaging would be protected if the message is somehow essential to the policymaking role of the agency. And then you also respond to the First Circuit case by saying, well, when you're talking about things like abortion funding, it's such an incendiary topic that people won't react strongly, and so therefore it's tantamount to a policy decision. So even for messaging documents, is your position that courts should whether the message is closely tied enough to the mission of the agency or whether there's enough controversy around the topic for deciding whether it's unprotected? So yes, to answer your Honor's question, the court should certainly ask whether a mess- if the agency is asserting that the messaging decision is the relevant policy decision at issue in a record, certainly the court should ask, is that messaging decision itself policy-oriented? And the district court did that here. And I actually, I think, I believe your Honor referred earlier to- So Ms. Freed, why then, if that's the answer, I take it then that your real concern is about the bond submissions, right? So they don't adequately justify the use of the- or reliance on the exemption. Is that fair? Yes, that is fair, your Honor. I know that there are some- go ahead, you answer that question. No, I was just going to say that the district court scoured the EP's bond indices, bond submissions, looking for assertions with respect to these messaging records, whether they reflect any policy deliberations about the underlying policy being messaged- If this is really about- and then I'll cede to Mr. Parker, but this is really about efficiencies in the bond submissions, the affidavits and the index and so on. Why isn't one appropriate response as an administrative matter from the judiciary's perspective? So let the EPA file amended, more robust bond submissions that provide either some greater justification or nexus, some more information. Because, your Honor, the government already had it filed- So what if I'm not satisfied with that answer? What's wrong with giving them, with the benefit of, for example, these arguments, another bite, one final bite? I don't think that the agency should have that opportunity. It's had multiple opportunities below, and it simply hasn't asserted that these- The agency made no assertion that any of the records on appeal, that the messaging decisions were policy-oriented. Now, we lost most of the records below. So if there was a bond submission that, or an affidavit, in the form of an affidavit, however it appears, that asserted that these were in connection with policy decisions, that would be enough. I'm not sure, your Honor. I think it really depends. The agency would need to show- Depends on what? On whether the agency has shown that these records, that the material redacted or completely withheld, was prepared to aid in the deliberation of a policy-oriented decision. And so- Mr. Parker? No, I have no questions. Can I get clarification on what you just said? So I thought you said a moment ago to me that sometimes a messaging decision, even if it's messaging about a policy that had already been adopted, would be tantamount to a policy decision if it was closely tied to the agency's essential policy-making role, or it was incendiary enough. Right? So then the State Department could say, well, we're making an announcement about abortion funding. It's a policy we've already adopted, but the way that we explain it to the public will have such consequences because it's a controversial issue that how we describe it is tantamount to a policy decision. I thought that you had said that that would be an acceptable argument on the part of the agency, right? So pretty much, your Honor. So if I could just clarify, when an agency shows that a particular messaging decision involves policy-oriented judgment, then that can be withheld even if it postdates the policy. So for an example, the Southern District of New York, in the New York versus Department of Commerce case that we cite in our brief, at page two gives an example of exactly this. The court notes that, quote, deliberations within the Federal Reserve about the timing and content of a policy announcement, although post-decisional with respect to the particular policy to be announced, also relate to a future decision, what to say and when to say it, that implicates questions within the scope of the agency's delegated policy-making authority and are, therefore, the type of deliberations the privilege is designed to be. Yeah, I get that. So I read that, and that's what I'm thinking of. I'm thinking of those two examples, the State Department's abortion funding and the Federal Reserve that's in that decision. It sounds like the distinction that's being drawn there is just that when the Federal Reserve announces it's already decided policies that just have such large consequences that we're going to consider that to be a policy decision, right? And in respect to the State Department, it sounds like, well, it might not have large economy-wide consequences, but it's very controversial, and so we need to be careful about how we describe it. So that means that for messaging decisions, we're always doing an inquiry about how important the announcement is and how controversial it is in society to decide whether that can be tantamount to a policy decision and can be withheld. So for messaging records, the inquiry has to be the same for any other record. Is the decision policy-oriented? So in the Federal Reserve example, those policy announcements themselves were policy-oriented because the announcement itself causes a huge effect. There's a market effect, the announcement effect, and the Federal Reserve statutory directive. Yeah, so taking that for granted, when an agency that regulates a smaller part of the world, let's say the Department of Education is announcing some policy that's going to affect all universities, it might not have economy-wide effects, but it might have dramatic effects within that industry. I mean, can we say that then the way they announce that kind of policy is tantamount to a policy decision, or does it matter that it's in a larger economy as versus the particular regulated industry? How do we conduct this analysis about how important it is and how tied it is, how attached it is to the mission? Well, I think the key inquiry when we're dealing with an agency saying that the messaging decision itself is policy-oriented is, is this message itself intended to affect policy? So in New Hampshire Right to Life, I'm going back to that because Your Honor brought that up a few times, I mean, we think that's an example of the communication decision that itself entails policy-oriented judgment, because there the HHS was deciding whether and how to announce that policy decision to the public. So the messaging record at issue there was an initial announcement of a policy. And we know that the timing and content of a policy announcement might incite questions within the scope of the agency's delegated policymaking authority. And I want you to remember that you're deliberating over a messaging decision, aren't they always deciding the timing and content of the announcement? And sometimes it might have economy-wide effects. In the Federal Reserve example, sometimes it might affect the way an oversight committee is going to treat the agency. It's like deciding how to describe its policies to members of Congress in an oversight hearing and so on. Sometimes it affects how stakeholders are going to respond to the agency. But it seems like those considerations are the rule rather than the exception. I mean, I'm not sure what to answer the factual question about what percentage of messaging decisions are policy-oriented or not. I think the key point is the agency needs to at least assert that they are if it wants to withhold these records. Well, that goes to my question. It goes back to the remand issue that you and I discussed. So if the EPA here had in its bond submissions stated, asserted, and we can quibble about how you can contest that, but asserted that these messaging records were meant to affect the policy, that would, even under your approach, at least at first blush, satisfy the district court's test. I mean, I suppose, but they couldn't assert it in just a conclusory fashion. I mean, I don't think... No, no, no. I'm not... But if that were the assertion, and I said, set aside the quibbles about whether that's enough and what's enough exactly. But if that were the basic assertion, that would satisfy the test that the district court has established and that you embrace. Is that correct? I mean, we agree that to the extent that EPA... I'm just... Is that correct? Yes, it's correct, as long as the agency actually shows that. But again, we don't think that the agency should be allowed a fourth bite at the apple in this case. I understand that. All right. So we've kept you well past your time as well. Ms. Onozawa, you have three minutes for a vote. Thank you, Your Honor. So to be clear, the question on appeal is not relating to the sufficiency of the agency's two detailed bond affidavits, and it's over 100-page bond index. The question is the district court's holding that, and I quote from page 290 of the joint appendix, that the key inquiry in determining whether a messaging document is protected by the privilege is whether the draft of communications reflect deliberations about what message should be delivered to the public about an already decided decision, policy decision, or whether the communications are the nature that would reveal the deliberative process underlying a not yet finalized policy decision. And that distinction, that dichotomy we submit here doesn't align with the precedent of ACLU versus DOJ and the First Circuit's decision in New Hampshire right to life. It sounds like a moment ago, the opposing counsel was... Tell me again what you think the test should be. So again, the test should be that deliberations regarding how to convey an already decided policy to the public can be subject to the deliberative process privilege if it's part of a... If the deliberation, the messaging record is part of a specified consultative process, which we submit would be the decision as to what to say to the public. The record reflects the personal opinions of the writer, and if released, the record would accurately reflect or prematurely disclose the agency. That's the standard that's established under this court's precedent in Grand Central Partnership and TAG. It sounds like the position that that ought to apply to both before and after the decision. So it would apply to records deliberating how to present, describe, explain, or answer questions about an already decided decision, an already decided agency action. And did the district court suggest that the bond submissions, at least with respect to certain records, didn't satisfy that? So the district court faulted the agency bond submissions as related to the four briefing records that we discussed during my opening. But as to the messaging records, what the district held was that EPA's acknowledgement that certain documents concerned whether and how the agency should publicly present previously decided policies, that that in and of itself was fatal to the EPA's position. Again, because the EPA's characterization of documents fell into that category of messaging records, which the district court held was key to determining, again, on its face and categorically, that it was not of a nature that would reveal a process underlying an already decided position. Am I right that this issue is in front of the D.C. Circuit currently in Reporters' Committee for Freed? I'm not sure about that, Your Honor. Okay. Okay. All right. I apologize. So it sounds to me like the counsel for NRDC a moment ago was perhaps drawing a different line than the language you just quoted from the district court, which is that sometimes you might have a messaging decision where how and when you give the message, even with respect to an already decided policy, will affect the public response. In the case of incendiary policies, there might have market effects and so on. And even if there's not a general rule for withholding messaging decisions, if the agency said that, it might be a messaging, it might be tantamount to a policy decision. So what's your reaction to that position, drawing the line there? I'm sorry. Drawing the line with respect to messaging decisions about incendiary policies? The idea would be that maybe the agency or a court would do an inquiry with respect to messaging decisions as to whether it really involves considerations of how and when to deliver a message, because that was a public policy effect. I'm sorry. The last part of your question was cut off. It got cut off. Sorry. Can you hear me? Is this okay? It sounds to me like opposing counsel was saying that there might be cases where an agency's messaging decision about how and when to communicate a message would have public policy effects because of the way the public would respond or the economy would respond or something like that. And that an agency could assert that, the burden would be on the agency to show that that's what was going on and it was not a different kind of messaging decision. So what are the problems with drawing the line there? I'm not sure how one would draw the line in practice. I mean, look, for the deliberative process privilege to work at promoting candor among agency employees, there have to be clear rules. And I can't imagine how it would be workable in practice for employees engaging in deliberations about how to message an already decided policy to consider, I don't know, the public reaction or the controversial or not nature of the policy. And again, and I think NRDC's test is also not workable insofar as whether there may be questions, for example, about an already decided policy that I've stated before that may have policymaking implications in terms of deciding how to implement it, deciding how it applies to certain stakeholders, deciding when it might not apply. And then so in the mind of the decision-makers... You cannot really identify just... I'm trying to understand this. You cannot identify, as we have this conversation right now, a messaging record that would not somehow relate to, have a real nexus to policy. Your point is previously announced policy, that's one thing, but it's always in connection with the policy. Every messaging record from every federal agency, that must be the position. And that's why you point out that specific, what you described as law and just from a decision. I just want to understand the clear parameters. That must be the government's position. And whether or not that's totally consistent with the First Circuit is a separate issue, but that is currently the government's position. Is that correct? But let me, to clarify, I think it's the First Circuit recognized a message, a decision about how and what to communicate to the public is a decision in and of itself. I think that's the core. And it's a policy decision. Not... Well, it's a decision that implicates policy-oriented judgment, I guess, is how you had described it before. And maybe it fits into our cases. I think that's right, Your Honor. And look, I can't say here today that policy-oriented... But look, if the memo said, let's be clear as we can be and consistent as we can be, and let's stay on message, no deviations, is that protected? Possibly, Your Honor. And again, it's hard to, without understanding the context in which that message was generated, I couldn't say off the bat whether it was or was not subject to the deliberative process privilege. I would say, though, that to the extent, let's say it was a recommendation from a subordinate to an official, and the subordinate, it was just the personal  message, whatever that means, then it arguably would fall on the deliberative process privilege. But it's hard to answer, again, without further context. And again, the point here is that we submit that it's wrong... Well, would you concede that... Well, I guess, well, how about... Wait a minute, Judge Parker, Judge Parker, Judge Parker. Okay, okay, okay. Would you concede that it might not? Sure, it's possible. But again, I think that, in and of itself, it's hard to discern without understanding who the speaker was, what the messaging decision facing the agency was, and what that recommendation, who made that recommendation. It sounds to me like it could be, but again, I don't know. Well, how about this hypothetical? So, if the secretary, the head of an agency is going before Congress, and members of Congress have asked the head of the agency to explain why the agency has adopted some kind of enforcement posture toward a regulated industry or whatever. And the secretary writes an email that says, maybe I should use this occasion to announce this or that other policy and explain it's all part of the agency-wide effort to tackle some kind of a problem. And then somebody else within the agency says, no, let's stay on message and focus on the questions. I guess you would say that that would be deliberative because they're deciding how to present their agenda and explain themselves before Congress. But if the secretary were simply going to the agency and somebody just sent the secretary an email that says, good luck, stay on message, maybe that would not be part of the deliberative process, right? Would that be a useful distinction? I think that's fair. It may well be that a one-line, good luck, stay on message, may not be deliberative insofar as it doesn't really encapsulate an opinion, a subjective opinion, recommendation, or analysis. But I think the latter discussion about like, well, should I or should I not include an announcement about a separate policy? Or should I just focus the substance of my talk on this one policy? That would certainly be deliberative because it goes to the substance of the message. Okay. Well, thank you. Thank you. Thank you both. That's been very helpful. Obviously, we'll reserve the decision.